UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK A. HERRERA-SCHMITZ,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

Case No.  15-cv-00333-MEJ

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 13, 14

## INTRODUCTION

Plaintiff Mark A. Herrera-Schmitz ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Commissioner of Social Security ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  Dkt. Nos. 13, 14.  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion for the reasons set forth below.

## BACKGROUND

Plaintiff was 37 years old as of the alleged onset of his disability on January 1, 2007, and 40 years old as of December 31, 2009, the date he was last insured under the terms of the Social Security Act.  AR 15, 103.

### A.    Treating Psychiatrist Frederick Huang, M.D.

Plaintiff originally obtained psychiatric treatment at the San Francisco Community Mental Health Services department ("San Francisco Mental Health") from 1995 to 2002, and after briefly stopping treatment, returned in November of 2002 to resume his medications and treatment.  AR

United States District Court
Northern District of California

209, 210, 247.

On December 8, 2006, Plaintiff presented to Dr. Frederick Huang, a psychiatrist at San Francisco Mental Health, reporting "mini" panic attacks once a week, general anxiety, agoraphobia, and fear of heights and of flying. AR 262. He was seeking an adjustment in his medications, as Prozac had made him jittery and unable to sleep and Zoloft make him a "zombie." AR 261-62. Dr. Huang's diagnostic impression was of major depressive disorder, moderate, in remission; panic disorder with agoraphobia; generalized anxiety disorder; and specific phobias of heights and flying; stable on his current regimen of Paxil and Buspar, which were refilled. AR 266. Dr. Huang also prescribed Ambien for sleep. *Id.* Dr. Huang refilled Plaintiff's Paxil and Buspar prescriptions between February of 2007 and August of 2008. AR 264.

Plaintiff next presented to Dr. Huang on August 3, 2007, reporting that his mood was stable and that he likes his medication regimen. AR 267. Examination showed a euthymic mood and was otherwise within normal limits. *Id.* He was diagnosed with major depressive disorder in remission, and with diminished panic disorder with agoraphobia. *Id.* He was stable on his current regimen of Paxil, Buspar, and Ambien. AR 267-68.

By July 7, 2008, Plaintiff was "still having depressive symptoms: sometimes 'barely getting out of bed,' feeling in a fog," having difficulty sleeping, and with a negative outlook. AR 212. Positive findings on mental status examination consisted of slow speech, a depressed mood, fair to poor insight and judgment, and fair to poor impulse control. *Id.* Dr. Huang diagnosed depressive and anxiety disorders, for which Plaintiff continued with Paxil and Buspar, and ruled out panic disorder without agoraphobia. *Id.*

During an August 4, 2008 follow-up with Dr. Huang, Plaintiff was still feeling depressed and believed he "just ha[d] to accept that [his depression was] a chronic disease." AR 459. He was feeling tired during the day and having difficulty falling asleep. *Id.* He characterized his daily activities as "haphazard," and rated his mood a five on a one-to-ten scale over the preceding month. *Id.* He was concerned about changing medications because of previous side effects he experienced from other antidepressants. AR 459. Positive findings on mental status examination

United States District Court
Northern District of California

consisted of slow psychomotor activity, slow speech, a depressed mood and affect, fair insight and judgment, and fair impulse control.  AR 459-60.  Dr. Huang affirmed a diagnosis of depressive and anxiety disorders, with his depression only "partially treated."  AR 460.  Paxil and Buspar were continued, and he started nortriptyline.  *Id.*

On September 8, 2008, Plaintiff reported to Dr. Huang that he felt "some improvement in his mood" since starting nortriptyline, although he was more fatigued.  AR 457.  Mental status examination again showed slowed motor activity and speech, a depressed mood and affect, fair insight and judgment, and fair impulse control.  *Id.*  All three medications were continued, with the nortriptyline dosage increased.  AR 458.

During an October 6, 2008 follow-up with Dr. Huang, Plaintiff was "still having sedation and episodically sleeping 'all day' while on his current medication[]" regimen.  AR 455.  Clinical findings remained unchanged from the two prior sessions.  *Id.*

In a letter dated October 6, 2008, Dr. Huang affirmed Plaintiff's treatment with "Team 2" at San Francisco Mental Health since 1995.  AR 237.  Dr. Huang indicated Plaintiff "carrie[d] a diagnoses of major depressive disorder, recurrent, moderate; and rule[d] out panic disorder without agoraphobia."  *Id.*  Plaintiff's symptoms, including feeling "barely able to get out of bed," low energy, and low self-esteem, impaired his ability to work.  *Id.*

By November 3, 2008, Plaintiff was still sedated in the mornings; his "good days" and "bad days" were divided equally, and he was lamenting no longer having positive things in his life like a girlfriend and a job.  AR 451.  He was trying to avoid "lash[ing] out" at others, as he had done to his mother and his brother, which landed him in jail.  *Id.*  Mental status examination still showed slowed psychomotor activity and speech, sparse speech, a depressed mood and affect, fair insight and judgment, and fair impulse control.  *Id.*  His medications were continued, although Dr. Huang was considering tapering him off Paxil.  AR 454.

By December 8, 2008, Plaintiff was having difficulty with dizziness and impaired eyesight in addition to sedation.  AR 448.  He wondered whether these were side effects of the nortriptyline.  *Id.*  Examination findings remained the same, and his medications were continued.

3

United States District Court
Northern District of California

AR 448-49.

By January of 2009, Plaintiff reported some improvement in his mood, although examination still showed slow psychomotor activity; slow and sparse speech; a depressed mood and affect; and fair insight, judgment, and impulse control.  AR 444.

Dr. Huang completed a Psychiatric/Psychological Impairment Questionnaire on January 14, 2009, based on Plaintiff's treatment at San Francisco Mental Health since November of 2002. AR 402-08.  He diagnosed major depressive disorder, recurrent and moderate, with a current Global Assessment of Function ("GAF") of 50.  AR 402.  As a result of Plaintiff's mental impairment, Dr. Huang found Plaintiff would be "markedly limited" in his abilities to work in coordination with or proximity to others without being distracted by them, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  AR 405-06.  Additionally, Dr. Huang found Plaintiff would be "moderately limited" in his abilities to perform activities within a schedule, to maintain regular attendance, to be punctual with customary tolerance, and to sustain ordinary routine without supervision.  AR 405.  Plaintiff would also be "moderately limited" in his abilities to complete a normal workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without rest periods of unreasonable quantity and length, and to interact appropriately with the general public.  AR 406.  Dr. Huang described him as being "fearful of interacting with others."  AR 407.  He estimated Plaintiff would miss work more than three times a month due to his mental impairments.  AR 408.

In a short narrative report also dated January 14, 2009, Dr. Huang affirmed Plaintiff's current symptoms of anhedonia, poor motivation, and low energy; and that he fears interacting with others in the workplace due to fears of interpersonal conflicts.  AR 401.

During a February 2009 follow-up with Dr. Huang, Plaintiff reported improvement in his "reactivity to certain events," but he was still feeling afraid of others' aggression and his potential reaction to it.  AR 442.  Plaintiff stated that Dr. Huang "might get a call someday with them telling you that I am in jail."  AR 442.  Dr. Huang still believed his depression was only "partially"

4

responsive to treatment.  AR 442.

On March 18, 2009, Plaintiff reported an improvement in his mood, but he was still having daytime sedation and concerns about his anxiety.  AR 438.  Mental status examination findings remained unchanged.  *Id.*  His medications were continued, with the Buspar dosage increased due to his anxiety.  AR 439.  Although his anxiety decreased somewhat the following month, he was "[s]till having anxiety and panic at times."  AR 436.  In May of 2009, his depression had worsened over the preceding week.  AR 433.

In June of 2009, Plaintiff was still feeling sedated in the mornings and was "sad" about the mental health clinic location change.  AR 431.  He then missed three out of four appointments. AR 424, 427, 429.  In October of 2009, Plaintiff was still depressed, and again reported having been "affected strongly" just because the clinic had moved locations.  AR 425.

In November of 2009, Plaintiff reported anxiety attacks twice weekly when in crowds, which made him feel jumpy and afraid of "weird things" that he saw, such as a man yelling in the street.  AR 422.  Examination findings remained the same.  *Id.*  He missed his December 2009 appointment.  AR 418.

In a letter dated December 11, 2009, Dr. Huang affirmed the responses he gave in his January 14, 2009 questionnaire because Plaintiff's condition "ha[d] not improved" since that time. AR 400.

At his January 2010 appointment with Dr. Huang, Plaintiff reported difficulty sleeping over the preceding two weeks.  AR 416.  Dr. Huang continued to assess Plaintiff's depression as only "partially treated" and continued his Paxil, nortriptyline, and Buspar.  AR 416-17.  In February of 2010, he arrived 30 minutes late and reported still feeling depressed and that he was still "getting used to the medications."  AR 414.  In March of 2010, he was still fearful of walking outside, and was still suffering from "low-level anxiety when he le[ft] the house"; he described himself as "afraid of people."  AR 412.  Examination findings remained unchanged.  *Id.*

During an April 19, 2010 follow-up with Dr. Huang, Plaintiff reported being frustrated living with his mother and he was having panic attacks every week or so.  AR 410.  He avoided

United States District Court
Northern District of California

leaving the house due to his fear, but he was trying to "push" himself to leave the house "occasionally." AR 410. The Paxil, nortriptyline, and Buspar were all continued. *Id.*

**B.       Examining Psychologist Gary Balestin, Ph.D.**

On August 17, 2008, at the request of the state agency, psychologist Gary Balestin examined and evaluated Plaintiff. AR 213-20. Positive findings on Plaintiff's clinical interview included poor eye contact, such as averting his eyes while responding to questions, and exhibiting low to below-average effort in establishing a rapport with the doctor. AR 213-14. In addition, Plaintiff reported: anxiety "a good deal of the time," "incapacitating" chronic depression, panic attacks, a history of schizophrenia in both parents, current moderate suicidal ideation, moderate feelings of hopelessness, moderate ability to use professional resources, and moderate reliability of impulse control. AR 215-16.

Dr. Balestin also administered several standardized tests. AR 217-18. Plaintiff scored a full-scale intelligence score of 67, which would place him in the mild mental retardation range. AR 217. Dr. Balestin found this score inconsistent with Plaintiff's clinical presentation, his education of having graduated high school and earned an AA degree, and his work history as a sales representative. *Id.* Dr. Balestin therefore considered Plaintiff's score on the Wechsler Adult Intelligence Scale ("WAIS-III") an "[in]valid estimate of [his] functional intelligence." AR 218. Plaintiff's WAIS-III scores showed difficulty in tasks such as measuring verbal reasoning, general knowledge and factual information, social reasoning, visual analysis, clerical notations, visual-spatial reasoning ability, non-verbal conceptual reasoning, and sensitivity to non-verbal social cues. AR 218.

Dr. Balestin endorsed the diagnoses of major depression, recurrent, by self report; polysubstance abuse in full remission; panic with agoraphobia; and ruled out personality disorder. AR 219. Assessing Plaintiff's mental function, Dr. Balestin found that he has moderate to significant limitations in his ability to accept constructive criticism or instruction. AR 219-20.

**C.       Examining Psychiatrist Ronald Johnson, M.D.**

On November 13, 2008, the state agency sent Plaintiff to psychiatrist Ronald Johnson for

United States District Court
Northern District of California

6

examination and evaluation in connection with his disability claim.  AR 254-58.  Plaintiff reported a one-week psychiatric hospitalization in 1995 due to suicidal ideation and that he continues to have suicidal thoughts but without present intent.  AR 255.  He was still under the care of Dr. Huang, who had been prescribing Paxil, Trazodone, nortriptyline, and Buspar.  *Id.*

Positive findings on Dr. Johnson's mental status examination included low-average vocabulary and basic intelligence; evidence of a moderate degree of depression; "mild psychomotor retardation with associated slowness of movement, thinking, and speech"; features of passivity and dependency; and a moderately flattened affect.  AR 256.  Plaintiff's mental status examination also showed: inefficiency in completing simple numerical tasks, a lack of motivation or energy in responding to questions, recall of only three of four digits in reverse, poor psychological insight, and evidence of dependency and passivity in his judgment and in personal matters.  AR 256.  Based on his examination, clinical interview, and review of unspecified medical records, including the report from psychologist Balestin, Dr. Johnson found that Plaintiff "presents the general picture of depression in the context of maladaptive personality traits, leading to diminished self-supportive employment in the absence of significant close friendships or relationships outside of his nuclear family."  AR 256.  His diagnostic impressions were of dysthymic disorder, chronic, moderate; and personality disorder, and mixed features with depressive, avoidant, passive, and dependent traits.  *Id.*

Dr. Johnson opined Plaintiff would have "moderate difficulties concentrating and focusing on sustained, productive, timely work tasks in the normal course of a full 8-hour workday or full 40-hour workweek in a competitive environment."  AR 257.  Plaintiff would also have "moderate difficulties communicating effectively with others in a workplace, including the general public, co-workers, and supervisors."  AR 257.

**D.      Non-Examining Review Psychiatrist Robert Hood, M.D.**

On January 5 and 26, 2009, Dr. Robert Hood, a non-examining review psychiatrist with the state agency, assessed Plaintiff's mental function based on his review of the records contained in the case file.  AR 280-93.  Dr. Hood found Plaintiff was mildly limited in activities of daily

United States District Court
Northern District of California

living and social functioning; and moderately limited in maintaining concentration, persistence, and pace. AR 288. Dr. Hood found Plaintiff "moderately limited" in his abilities to understand, remember, and carry out detailed instructions; and to maintain attention and concentration for extended periods. AR 291. Plaintiff was also "moderately limited" in his abilities to complete a normal workday and workweek without interruptions from psychological symptoms, to perform at a consistent pace without rest periods of unreasonable length and frequency, and to accept instructions and respond appropriately to criticism from supervisors. AR 292. Dr. Hood concluded that Plaintiff retained the functional capacity to understand and remember simple and some detailed tasks, to carry out simple tasks for a normal workweek, to work in nonpublic settings, to respond appropriately to workplace changes or hazards, and to travel to familiar places. AR 293.

### SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On June 30, 2008, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on January 1, 2007. AR 103-11. The Social Security Administration ("SSA") denied Plaintiff's applications on initial review and again on reconsideration, finding Plaintiff did not qualify for disability benefits. AR 63-67, 71-75. On November 3, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 68. ALJ John Heyer conducted a hearing on February 1, 2010. AR 33-58. Plaintiff testified in person at the hearing and counsel represented Plaintiff. AR 36-50. The ALJ also heard testimony from Vocational Expert ("VE") Jeff Malmuth. AR 50-57.

### A.    Plaintiff's Testimony

Plaintiff worked from approximately 1998 to 2000 as a researcher for a high-tech recruiting company, and thereafter worked for several other companies as a sales representative until 2005; he stopped working altogether because the work became "too stressful." AR 37-38. Each of Plaintiff's jobs ended when he quit or got fired due to his mental condition as he cannot work while being around other people. AR 38-39. Being around "a lot of commotion" makes Plaintiff "really nervous," anxious, and provokes panic attacks. AR 39. In addition to his

8

United States District Court
Northern District of California

difficulty working around others, Plaintiff has problems sleeping either too much or too little. AR 40. In his job as a researcher in 1998, Plaintiff used to work in the evenings, away from other people, but his condition "was [not] as bad back then" as it is currently. *Id.*

Plaintiff has been obtaining psychiatric treatment at Team 2 Clinic consistently since 1993, when he was hospitalized for being suicidal. AR 41, 43. His treatment consists of the medications Paxil, nortriptyline, and Buspar, as well as bimonthly therapy, which help him only "somewhat." AR 41, 43. Plaintiff feels tired a lot of the time, but he is unable to determine whether his somnolence stems from his medications or his underlying conditions. AR 43. On "bad days," which occur once or twice a week, Plaintiff feels "pretty hazy mentally," with a "dark, gloomy outlook on life," although no longer to the point of feeling suicidal. AR 45. He attributes the difference between his condition in the 1990s—when his depression was worse—and his current condition—his anxiety is now worse—to the effects of his medication and therapy. AR 45-46.

Although Plaintiff feels able to start a job, he would have problems being able to perform it consistently due to a lack of energy, the variability of his moods, and the unpredictability of whether he can continue to work within a schedule and whether he will be absent on days he is not feeling well. AR 40, 44, 48. In a typical day, Plaintiff wakes up at a variable hour, depending on whether he was able to fall asleep the night before; sometimes takes a walk; spends time with his parents, whom he lives with; watches TV; sometimes helps with the household chores; and reads or takes the dogs for a walk only if he is "feeling really good." AR 42.

**B.  Vocational Expert's Testimony**

The VE classified Plaintiff's past relevant work as researcher, which is characterized in the Dictionary of Occupational Titles ("DOT") as a sedentary, semi-skilled job with a special vocational preparation ("SVP") of 6 (DOT 199.267-034). AR 51. However, the job as actually performed by Plaintiff was of a sales representative in commercial equipment and supplies, a light, semi-skilled job, with a SVP of 3 or 4 (DOT 275.357-018). AR 51. The VE testified that a hypothetical person whose only functional limitation is a need to have no more than minimal

9

contact with other individuals—i.e., a job that could be performed alone or with infrequent contact with supervisors—would be able to perform Plaintiff's past relevant work as researcher as well as home-based sales representative.  AR 51-52.  Alternative jobs responsive to this hypothetical include janitor (DOT 381.687-018), a medium job with an SVP of 2; and hand packager (DOT 920.587-018), also exertionally medium with an SVP of 2.  AR 52.

A second hypothetical person who would miss three workdays per month would not be employable in either of Plaintiff's past jobs.  AR 53.  However, if the person was able to work off-site on those days—that is, work from home—then the individual would be capable of performing the researcher and at-home sales person positions.  AR 53-54.  For example, Plaintiff worked for a friend during his past job as a researcher, which allowed Plaintiff to work from home.  AR 50.

If a third hypothetical person were truly unable to perform necessary job functions two to three workdays per month, he would be unable to perform any of the work identified.  AR 55.

A fourth hypothetical individual with a 30-percent deficit in his ability to sustain focus and concentration to complete tasks in a timely manner—meaning he would be "off-task" for 30 percent of the time—would be unable to perform any of the work identified.  AR 56.

## C.   ALJ's Findings

The Commissioner of Social Security promulgated regulations that provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v.*

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

1   *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

2        The ALJ must first determine whether the claimant is performing "substantial gainful

3   activity," which would mandate the claimant be found not disabled regardless of medical

4   condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  Here, the

5   ALJ determined that Plaintiff had not performed substantial gainful activity since January 1, 2007.

6   AR 17.

7        At step two, the ALJ must determine, based on medical findings, whether the claimant has

8   a "severe" impairment or combination of impairments as defined under the Social Security Act.

9   20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20

10  C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe

11  impairments: major depressive disorder and anxiety.  AR 17.

12       If the ALJ determines that the claimant has a severe impairment, the process proceeds to

13  the third step, where the ALJ must determine whether the claimant has an impairment or

14  combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404,

15  Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment meets the

16  listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is

17  conclusively presumed disabled, without considering age, education, and work experience.  20

18  C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or

19  combination of impairments that meets the listings.  AR 17.

20       Before proceeding to step four, the ALJ must determine the claimant's Residual Function

21  Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work

22  setting, despite mental or physical limitations caused by impairments or related symptoms.  20

23  C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the

24  claimant's medically determinable impairments, including the medically determinable

25  impairments that are nonsevere.  20 C.F.R. § 404.1545(e).  Here, the ALJ determined that Plaintiff

26  has the RFC to "perform a full range of work at all exertional levels but needs to have an

27  occupation with minimal interpersonal interaction in person."  AR 18.

28

United States District Court
Northern District of California

11

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f).  Past relevant work is work performed "within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it."  20 C.F.R. § 404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ determined that Plaintiff could perform past relevant work as a researcher and as a sales representative.  AR 22.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart. P, Appendix 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform work as a janitor and hand packager.  AR 22.

**D.      ALJ's Decision and Plaintiff's Appeal**

On March 16, 2010, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  AR 15-23.  Plaintiff then requested that the Appeals Council review the unfavorable decision, submitting additional medical evidence and legal arguments in support of his claim.  AR 7, 10, 194-98, 409-65.  By Notice dated November 26, 2014, the Appeals Council declined to set aside the ALJ's decision, making that decision the Commissioner's final determination.  AR 1-6.

Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On May 28, 2015, Plaintiff filed the present Motion for Summary Judgment.  Dkt. No. 13.  On June 25, 2015, Defendant filed a Cross-Motion for Summary Judgment.  Dkt. No. 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the "administrative record as a whole, weighing the evidence that supports and detracts from the ALJ's conclusion."  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities.  *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *See Curry v. Sullivan*, 925 F.2d 1127, 1129, 1131 (9th Cir. 1990).  A court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

Plaintiff raises two issues in his Motion: (1) the ALJ erred in failing to advance legally sufficient rationales for rejecting the mental function assessments of Dr. Huang, and in failing to either credit or reject the limitations by Drs. Johnson, Balestin, and Hood; and (2) the ALJ's finding that Plaintiff's subjective complaints are not credible is unsupported by clear and convincing evidence.

United States District Court
Northern District of California

**A.      Physician Opinions**

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, but was limited to minimal interpersonal interaction in person.  AR 18-22.  In formulating this RFC finding, the ALJ found the opinion of Plaintiff's treating psychiatrist, Dr. Huang, was not entitled to controlling weight.  AR 22.  The ALJ found Dr. Huang's opinion was inconsistent, noting that Dr. Huang described moderate limitations, yet concluded Plaintiff was unable to work.  *Id.*  The ALJ also found the opinion inconsistent because Dr. Huang found Plaintiff "ha[d] no limitations in understanding, remembering and carrying out detailed instructions; and mild limitations in the ability [to] maintain attention and concentration for extended periods and respond appropriately to changes in the work setting."  *Id.*

In his Motion, Plaintiff argues "the ALJ failed to credit any of the moderate or marked limitations endorsed by Drs. Huang, Johnson, or Hood."  Pl.'s Mot. at 4.  He notes that while Dr. Balestin found Plaintiff "only limited in his ability to accept constructive criticism or instruction, Drs. Huang, Johnson, and Hood also found him, at a minimum, either moderately or markedly limited in his abilities to concentrate and focus in a sustained manner and to communicate effectively with others."  *Id.*  "Because Drs. Huang, Johnson, and Hood each endorsed limitations beyond [Plaintiff's] ability to communicate with others," Plaintiff maintains their assessments are inconsistent with those of Dr. Balestin, and may therefore only be rejected for specific and legitimate reasons.  *Id.*

In response, Defendant argues the ALJ properly found Dr. Huang's opinion is not entitled to controlling weight because Dr. Huang's opinion is not well supported and internally inconsistent.  Def.'s Mot. at 2-3.  Defendant further argues that the moderate limitations Dr. Huang assessed are inconsistent with disability, as Dr. Huang's own findings show that "Plaintiff [can] complete most work-related activities with little to no limitation."  *Id.* at 4.  Defendant maintains that "the opinions from psychological consultative examiner Gary G. Balestin, Ph.D., psychiatric consultative examiner Ronald F. Johnson, M.D., and the State agency physicians who reviewed the record, D. Lucila and R. Hood, also serve as substantial evidence in support of the

1   ALJ's findings." *Id.* at 5.

2       1.    <u>Legal Standard</u>

3         When determining whether a claimant is disabled, the ALJ must consider each medical

4   opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b);

5   *Zamora v. Astrue*, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010).  In deciding how much

6   weight to give to any medical opinion, the ALJ considers the extent to which the medical source

7   presents relevant evidence to support the opinion.  20 C.F.R. § 416.927(c)(3).  Generally, more

8   weight will be given to an opinion that is supported by medical signs and laboratory findings, and

9   the degree to which the opinion provides supporting explanations and is consistent with the record

10  as a whole.  20 C.F.R. § 416.927(c)(3)-(4).

11        In conjunction with the relevant regulations, the Ninth Circuit "developed standards that

12  guide [the] analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of Soc. Sec.*,

13  528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the

14  opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

15  those who examine but do not treat the claimant (examining physicians); and (3) those who neither

16  examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

17  (9th Cir. 1995).  "By rule, the Social Security Administration favors the opinion of a treating

18  physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing

19  20 C.F.R. § 404.1527(c)(2)).  If a claimant has a treatment relationship with a provider, and

20  clinical evidence supports that provider's opinion and is consistent with the record, the provider

21  will be given controlling weight.  20 C.F.R. § 416.927(c)(2).  "The opinion of a treating physician

22  is given deference because 'he is employed to cure and has a greater opportunity to know and

23  observe the patient as an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595,

24  600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

25        "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-

26  supported' or because it is inconsistent with other substantial evidence in the record, the [SSA]

27  considers specified factors in determining the weight it will be given."  *Orn*, 495 F.3d at 631.

28

United States District Court
Northern District of California

1   "Those factors include the '[l]ength of the treatment relationship and the frequency of

2   examination' by the treating physician; and the 'nature and extent of the treatment relationship'

3   between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the
> opinion of the treating physician, include the amount of relevant evidence that
> supports the opinion and the quality of the explanation provided; the consistency of
> the medical opinion with the record as a whole; the specialty of the physician
> providing the opinion; and '[o]ther factors' such as the degree of understanding a
> physician has of the [Social Security] Administration's 'disability programs and
> their evidentiary requirements' and the degree of his or her familiarity with other
> information in the case record.

9   *Id.* (citing 20 C.F.R. § 404.1527(c)(3)-(6)).  Nonetheless, even if the treating physician's opinion

10   is not entitled to controlling weight, it is still entitled to deference.  *See Orn*, 495 F.3d at 632

11   (citing SSR 96–2p,[2] 1996 WL 374188 (July 2, 1996)).  "In many cases, a treating source's medical

12   opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

13   test for controlling weight."  SSR 96-2p at 4.

14       2.    <u>Application to the Case at Bar</u>

15          There is no dispute that Dr. Huang is Plaintiff's treating psychiatrist and he opined that

16   Plaintiff could not work.  AR 237, 4001.  He found Plaintiff was markedly limited in working in

17   coordination with or proximity to others, accepting instructions and responding appropriately to

18   criticism from supervisors, and getting along with co-workers or peers without distracting them or

19   exhibiting behavior extremes.  AR 405-06.  However, the ALJ found this opinion was not well

20   supported.  AR 22.  The ALJ noted Plaintiff's record reflected a long history of depression, but he

21   was generally only seen for medication management.  AR 19, 211.  In his July 2008 Psychiatry

22   Progress Note, Dr. Huang noted that Plaintiff was cooperative and had no abnormal motor

23   movements.  AR 212.  Plaintiff's thought process was linear and goal-directed, thought content

---

[2] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs
nonetheless."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20
C.F.R. § 402.35(b)(1).  The Ninth Circuit defers to the rulings unless they are "plainly erroneous
or inconsistent with the Act or regulations."  *Chavez v. Dep't of Health and Human Serv.*, 103
F.3d 849, 851 (9th Cir. 1996).

United States District Court
Northern District of California

1   was normal, cognition was grossly intact, and insight and judgment were fair to poor.  *Id.*  Later

2   that month, Plaintiff presented as slightly disheveled and casually dressed, and with an irritable

3   mood and constricted affect.  AR 211.  Plaintiff's thought process was linear; he reported suicidal

4   ideation but no intent or plan.  *Id.*  Plaintiff had good eye contact, fluent speech, and fair insight

5   and judgment; and Plaintiff was oriented in three spheres.. *Id.*  In February 2009, Plaintiff

6   reported improvement over the months in his reactivity to certain events, although he "still fel[t]

7   afraid of other's aggressivity."  AR 299.  Despite slow speech and depressed mood and affect,

8   Plaintiff's mental status examination findings revealed linear, goal-directed thought process;

9   normal thought content; grossly intact cognition; and fair insight, judgment, and impulse control.

10  *Id.*  In March 2009, Plaintiff reported continued improvement on nortriptyline over several

11  months, but he was still "worried about anxiety."  AR 301.  In April 2009, Plaintiff reported a

12  corresponding decrease in anxiety since he increased Buspar, although he still had "anxiety and

13  panic at times."  AR 302.  The ALJ reasonably concluded these treatment records did not support

14  Dr. Huang's opinion.  AR 21-22; *see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

15  (ALJ provided adequate reasons for not fully crediting the treating doctor's opinion that the

16  claimant "was disabled" by pointing out that clinical findings described the claimant as a "[w]ell

17  developed, well nourished middle aged female in no acute distress").

18         The ALJ also found that Dr. Huang's opinion was internally inconsistent because his

19  assessments did not support the conclusion Plaintiff could not work.  AR 22.  Dr. Huang

20  concluded Plaintiff had no limitations in understanding, remembering and carrying out detailed

21  instructions.  AR 20.  Plaintiff only had mild limitations "remember[ing] work like actions and

22  work like procedures, maintain[ing] attention and concentration for extended periods," and

23  "maintain[ing] socially appropriate behavior and adher[ing] to basic standards of neatness and

24  cleanliness."  AR 20.  Plaintiff also had mild limitations in his ability to respond appropriately to

25  changes in the work setting, to be aware of normal hazards and take appropriate precautions, and

26  to set realistic goals or make plans independently.  AR 20-21, 405-07.  Because Dr. Huang opined

27  that Plaintiff could complete a multitude of work-related activities with no more than mild

28

17

1   limitations, yet also opined that Plaintiff could not work, the ALJ properly found his opinion

2   entitled to less weight based on its inconsistency.  AR 20-22, 237, 405-07; *see Johnson v. Shalala*,

3   60 F.3d 1428, 1433 (9th Cir. 1995) (doctor's opinion may be discounted or rejected if it is self-

4   contradictory); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (internal inconsistencies

5   and ambiguities within doctor's opinion provided specific and legitimate reasons for ALJ to reject

6   opinion); *Valentine*, 574 F.3d at 692-93 (contradiction between treating physician's opinion and

7   his treatment notes constitutes a specific and legitimate reason for rejecting treating physician's

8   opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between

9   medical records and opinion provided a specific and legitimate reason for rejecting treating

10  physician's opinion); *Rollins*, 261 F.3d at 856 (ALJ permissibly rejected treating physician's

11  opinion when opinion was contradicted by or inconsistent with treatment reports).

12          Further, the ALJ properly noted that the moderate limitations Dr. Huang assessed are

13  inconsistent with disability.  AR 22.  "Moderate mental functional limitations . . . are not per se

14  disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks."

15  *Stenson v. Astrue*, 2012 WL 1154400, at *8 (S.D. Cal. Mar. 15, 2012) ("A moderate limitation

16  means that an individual is still able to function satisfactorily in the area of the limitation"); *see,*

17  *e.g.*, *Koehler v. Astrue*, 283 F. App'x 443, 445 (9th Cir. 2008) (ALJ's finding that claimant lacked

18  a severe mental impairment was proper even though claimant had a "moderate" limitation in the

19  "ability to respond to changes in the workplace setting"); *McLain v. Astrue*, 2011 WL 2174895, at

20  *6 (C.D. Cal. June 3, 2011) ("Moderate mental functional limitations . . . are not per se disabling .

21  . . ."); *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (noting that a claimant with

22  moderate limitations in the ability to respond appropriately to work pressures would still be able to

23  function satisfactorily).  Dr. Huang's own psychiatric/psychological questionnaire states that a

24  moderate limitation "significantly affects but does not totally preclude the individual's ability to

25  perform the activity."  AR 404.  The ALJ properly determined Dr. Huang's findings that Plaintiff

26  could complete many work-related activities with little to no limitation conflicted with his opinion

27  that Plaintiff could not work.  AR 20-22.  "The ALJ is the final arbiter with respect to resolving

28                                                    18

1    ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42 (citing *Andrews v.*

2    *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) and *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

3    Cir. 1989)).  As such, it was within the ALJ's province to resolve this conflict.

4         While Plaintiff may disagree with the ALJ's findings, the Court finds that this record

5    constitutes substantial evidence supporting the ALJ's decision to not give Dr. Huang's opinion

6    controlling weight.  Further, even "where the evidence is susceptible to more than one rational

7    interpretation," the Court must uphold the ALJ's decision.  *Magallanes*, 881 F.2d at 750; *see also*

8    *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v.*

9    *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)) ("When evidence reasonably supports either

10   confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the

11   ALJ.").  The ALJ must resolve determinations of credibility, resolution of conflicts in medical

12   testimony, and all other ambiguities.  *Batson*, 359 F.3d at 1196.

13        Plaintiff argues the ALJ committed reversible error by failing to consider the opinions of

14   Drs. Johnson, Balestin, and Hood as part of his RFC determination.  Pl.'s Mot. at 6-8.  However,

15   the ALJ discussed and incorporated all three into his decision.  AR 19-21.  He first discussed Dr.

16   Balestin's August 17, 2008 psychological consultative examination.  AR 19-20.  He noted that Dr.

17   Balestin endorsed the diagnoses of major depression, recurrent, by self report; polysubstance

18   abuse in full remission; panic with agoraphobia; and ruled out personality disorder.  AR 19.  The

19   ALJ also noted Dr. Balestin's finding that Plaintiff "did not appear to be consistently well

20   motivated, which called into question his general statements regarding his inability to work and

21   psychological state."  AR 19-20, 220.  Dr. Balestin assessed Plaintiff's mental function, finding

22   Plaintiff has moderate to significant limitations in his ability to accept constructive criticism or

23   instruction.  AR 219-20.  At the same time, he found that Plaintiff did not present with

24   neurovegetative symptoms; and that "sleep, eating, grooming, and attendance to activities of daily

25   [living] were all in the average range."  AR 19.  The ALJ further noted Plaintiff's test results

26   produced an IQ score of 67, but Dr. Balestin did not consider this score a "valid estimate" of his

27   functional intelligence as Plaintiff "presented with capacity in the average range."  AR 19, 218.

28

United States District Court
Northern District of California

19

1          Next, the ALJ discussed Dr. Johnson's November 13, 2008 evaluation.  AR 20.  Dr.

2   Johnson opined Plaintiff would have "moderate difficulties concentrating and focusing on

3   sustained, productive, timely work tasks in the normal course of a full 8-hour workday or full 40-

4   hour workweek in a competitive environment"; as well as "moderate difficulties communicating

5   effectively with others in a workplace, including the general public, co-workers, and supervisors."

6   AR 20, 257.  However, he also opined Plaintiff "would have no discernible difficulties

7   maintaining attendance in locations, based purely upon psychiatric condition, although there may

8   be features of passivity and possible passive-aggressiveness that would undermine his motivation

9   [for] sustained attendance in workplaces."  AR 20, 257.

10          Finally, the ALJ considered Dr. Hood's January 2009 assessments.  AR 21.  Dr. Hood

11   found Plaintiff was mildly limited in activities of daily living and social functioning; and

12   moderately limited in maintaining concentration, persistence, and pace.  AR 288.  Dr. Hood also

13   found Plaintiff "moderately limited" in his abilities to understand, remember, and carry out

14   detailed instructions; to maintain attention and concentration for extended periods; to complete a

15   normal workday and workweek without interruptions from psychological symptoms; to perform at

16   a consistent pace without rest periods of unreasonable length and frequency; and to accept

17   instructions and respond appropriately to criticism from supervisors.  AR 21, 291-93.  However,

18   Dr. Hood concluded that Plaintiff retained the functional capacity to understand and remember

19   simple and some detailed tasks, to carry out simple tasks for a normal workweek, to work in

20   nonpublic settings, to respond appropriately to workplaces changes or hazards, and to travel to

21   familiar places.  AR 21, 291-92.

22          Contrary to Plaintiff's argument, the ALJ included this medical evidence in his decision

23   and synthesized it into limitations he used to form his RFC finding.  AR 18-22.  While Plaintiff

24   may disagree with the ALJ's findings, the Court finds the ALJ rationally interpreted the medical

25   evidence of record and his decision provides substantial evidence to support his findings.

26   **B.     Credibility**

27          The ALJ found the objective evidence did not support Plaintiff's claims of disabling

28                                                      20

United States District Court
Northern District of California

limitations to the extent alleged.  AR 21.  The ALJ determined Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, such as watching television, reading the newspaper and books, walking the dog, vacuuming and sweeping." *Id.*  He also found the medications Plaintiff had been prescribed for his impairments had been "relatively effective" in controlling his symptoms.  *Id.*  The ALJ noted that Dr. Balestin felt Plaintiff "did not appear to be well motivated which called into question his general statements regarding his inability to work and psychological state," and that Dr. Huang's opinion was inconsistent in that he "describes moderate limitations, yet concludes [Plaintiff] is unable to work."  AR 21-22.

Plaintiff argues that none of these rationales satisfy the ALJ's burden of establishing that his testimony is not credible.  Pl.'s Mot. at 9.  He maintains his daily activities are not inconsistent with his claim that he is unable to maintain a job due to his difficulties being around others, his susceptibility to panic attacks, his difficulty sleeping, and his lack of energy.  *Id.* at 10.  While he admits his medications "have imparted some benefits," he argues several symptoms are intractable, including "daytime somnolence, sedation, insomnia, anxiety, panic attacks, feeling mentally 'foggy,' and unpredictability of moods." *Id.* at 10-11.  Finally, although Plaintiff does not dispute Dr. Balestin's finding that he "did not appear to be well motivated," he notes Dr. Balestin did not have access to Plaintiff's treatment records.  *Id.* at 11.

In response, Defendant argues the ALJ "discussed Plaintiff's treatment records in detail and reasonably concluded they did not support findings of total disability."  Def.'s Mot. at 8-9.  Defendant admits Plaintiff had some positive mental status examination findings, but maintains that treatment records indicate "Plaintiff was primarily seen for medication management, and that Plaintiff consistently improved with medication."  *Id.* at 9.

1.   <u>Legal Standard</u>

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, it must be determined "whether the claimant has presented objective medical

United States District Court
Northern District of California

1   evidence of an underlying impairment 'which could reasonably be expected to produce the pain or

2   other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

3   1991) (en banc)).  A claimant does not need to "show that her impairment could reasonably be

4   expected to cause the severity of the symptom she has alleged; she need only show that it could

5   reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting

6   *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

7        Second, if the claimant has met the first step and "there is no evidence of malingering, 'the

8   ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

9   specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

10  *Smolen*, 80 F.3d at 1281).  "The ALJ must state specifically which symptom testimony is not

11  credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.  Courts

12  must not engage in second-guessing, where the ALJ "has made specific findings justifying a

13  decision to disbelieve an allegation of excess pain, and those findings are supported by substantial

14  evidence in the record." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, "a finding

15  that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the

16  severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester v.

17  Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)

18  ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

19       Factors that an ALJ may consider in weighing a claimant's credibility include:

20  "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

21  between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and

22  testimony from physicians and third parties concerning the nature, severity, and effect of the

23  symptoms of which claimant complains." *Thomas*, 278 F.3d at 958-59.

24       2.    Application to the Case at Bar

25       Here, the Court finds that the ALJ properly rejected Plaintiff's testimony with specific,

26  clear and convincing reasons for doing so.  An ALJ's credibility finding must be properly

27  supported by the record, and sufficiently specific to ensure a reviewing court he did not

United States District Court
Northern District of California

"arbitrarily discredit" a claimant's subjective testimony. *Thomas*, 278 F.3d at 958 (citing *Bunnell*, 947 F.2d at 345-46). An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112. As noted above, the ALJ determined Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, such as watching television, reading the newspaper and books, walking the dog, vacuuming and sweeping." AR 21. The Ninth Circuit has held these activities are inconsistent with allegations of disability. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ's reasons for discrediting claimant's testimony were sufficient when he said the "record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances . . . . These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis."); *Mayes v. Massanari*, 276 F.3d 453, 457, 461 (9th Cir. 2001) (claimant's "testimony that she could do many daily activities," including watching television, straightening up her house, and shopping, "suggested that she could also work"). Although Plaintiff contends these activities are not compatible with work, the Ninth Circuit has held that such activities may nonetheless diminish a claimant's credibility. *See Molina*, 674 F.3d at 1112-13 (internal quotations and citations omitted) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ also supports his decision with other evidence of record. The ALJ noted the record substantiated that medications were relatively effective in controlling Plaintiff's symptoms. AR 21. Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see Taylor v. Astrue*, 386 F. App'x 629, 631 (9th Cir. 2010). Plaintiff "readily admits that his medications have imparted some benefit," but asserts "certain symptoms persist." Pl.'s Mot. at 10. However, nothing requires an individual to be entirely free of symptoms in order to work. *Fair*, 885 F.2d at 603 (disability

benefits are intended for "people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute"); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

Finally, the ALJ included Dr. Balestin's observation that Plaintiff did not appear consistently well-motivated during his examination.  AR 21, 220.  This is a proper factor for the ALJ to consider in weighing Plaintiff's credibility.  *See Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility, including "ordinary techniques of credibility evaluation . . . ."); *Thomas*, 278 F.3d at 958-59 (ALJ may consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains" when weighing credibility).  Although Plaintiff contends that Dr. Balestin did not have access to his treatment records, it was nonetheless proper for the ALJ to consider Dr. Balestin's findings, as they were based on his independent examination.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)

Taken as a whole, the Court finds that these provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.  Further, even if the Court were to find one of the ALJ's credibility reasons invalid, the Ninth Circuit has held that the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination . . . .*"  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (emphasis in original); *see also Batson*, 359 F.3d at 1197 (even if one of the ALJ's reasons for discrediting testimony is invalid, the ALJ's decision must still be upheld if otherwise supported by substantial evidence such that the error was harmless and the error "does not negate the validity of the ALJ's ultimate conclusion.").  While it is possible that a different ALJ would find Plaintiff's symptom testimony credible, it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations.  *See Fair*, 885 F.2dat 603 ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . .").  The Court finds the ALJ's reasons for discrediting Plaintiff's

United States District Court
Northern District of California

testimony are specific, clear, convincing, and supported by substantial evidence in the record.  The Court therefore finds the ALJ did not err in discrediting Plaintiff's testimony.  Accordingly, no reversible error was committed.

<b>CONCLUSION</b>

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: September 9, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

25